The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
 EVIDENTIARY MATTERS
Plaintiff submitted a Motion to Reopen to Take New Evidence in the form of deposition testimony of Mr. Charles Kent, a lay witness.
It is HEREBY ORDERED that plaintiff's motion is DENIED.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All of the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
4. Liberty Mutual Insurance Company was the carrier on risk from July 14, 1984 through July 14, 1986 and Employers Insurance of Wausau was the carrier on risk from July 14, 1978 through July 14, 1982.
5. On July 6, 1998, an order approving a compromise settlement agreement between plaintiff and Liberty Mutual was filed by Deputy Commissioner George Glenn. In exchange for the $20,000 lump settlement amount, Liberty Mutual was released from any further obligations to plaintiff as though it had been determined that Mr. Lawson's last injurious exposure occurred during the time period of July 14, 1985 to July 14, 1986 when Liberty Mutual was the carrier on the risk for the defendant-employer.
6. The issues to be determined by the Commission are as follows:
a) Whether Charley O. Lawson developed a compensable occupational disease as a result of the exposure in the course and scope of his employment with defendant-employer?
b) If so, what, if any, workers' compensation benefits is his widow entitled to receive?
***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Charley O. Lawson, deceased-employee, was born January 20, 1924. He worked as an electrician most of his life.
2. Charley O. Lawson, hereinafter Mr. Lawson, worked at various locations throughout his working career, including ship yards, power plants and commercial construction sites. Mr. Lawson also worked at various sites in maintenance of electrical systems.
3. While Mr. Lawson worked at the ship yards and power plant sites, he was exposed to asbestos dust either as a result of the work he was performing or as a result of the work others were performing.
4. Mr. Lawson worked for defendant-employer off and on from 1978 through 1986 as an electrician. Mr. Lawson was assigned to work at the Miller Brewing Plant in Eden, North Carolina.
5. Mr. Lawson's widow and son testified that while he was working at the Miller Brewing Plant that he would come home with his clothes covered in white and/or gray dust. Mrs. Lawson also stated that once Mr. Lawson had come home and told her that he had slipped and fallen while working in the boiler room.
6. Plaintiff also offered the testimony of Frank Yarbrough. Mr. Yarbrough testified that Mr. Lawson may have been exposed to asbestos while working at Miller Brewing Plant, but he could not say for sure.
7. Defendants offered the testimony of Thomas Goodman, Billy Lee White and Robert H. Soyars. They had worked at the Miller Brewing Plant at the time Mr. Lawson was working there and none of them recall ever being told that there was any asbestos in the plant other than when Miller Brewing had been notified that one of the pipes attached to the boiler had been insulated with a material containing asbestos prior to being installed. The only employees working during the pipe removal was the removal team.
8. Mr. Lawson, according to all the testimony offered, did not work in any areas likely to have any asbestos even if asbestos was located in the Miller Brewing Plant. Mr. Lawson did maintenance work primarily in the package and cold service areas, and he did little if any work in the boiler room.
9. Even if all the evidence offered by plaintiff is taken as true, there is no showing that Mr. Lawson was exposed to asbestos for thirty days within any seven-month period during his employment at the Miller Brewing Plant.
10. Mr. Lawson retired from his position in 1986 due to his poor health. When Mr. Lawson retired he was not able to perform his job due to shortness of breath.
11. Mr. Lawson did not seek any medical treatment until May 25, 1990, when he was seen and treated by Dr. Thomas O'Neill. When Dr. O'Neill initially saw Mr. Lawson, he determined that he was "very, very, very severely ill."
12. Dr. O'Neill diagnosed Mr. Lawson's condition as severe pulmonary obstructive disease, chronic respiratory insufficiency, severe right-sided heart failure and corps pulmonale. Dr. O'Neill stated that he felt that Mr. Lawson had pulmonary asbestosis when he first saw him. Dr. O'Neill caused a CT scan to be performed, but its results did not support Dr. O'Neill's opinion. Dr. O'Neill, who has substantial experience in the area of pulmonary asbestosis, indicated that at the time the CT scan was performed on Mr. Lawson, it was a new instrument being used in the diagnosis of pulmonary asbestosis and the test results would be different if performed today.
13. After Mr. Lawson's death an autopsy was performed. The pathologist did not make a finding that Mr. Lawson suffered from asbestosis, nor did he find any asbestos bodies in any lung tissue. He did indicate by addendum that the absence of asbestos bodies did not preclude the possibility of exposure to asbestos fiber.
14. After being advised of the pathologist's findings, Dr. O'Neill was still of the opinion that Mr. Lawson suffered from pulmonary asbestosis. Dr. O'Neill indicated that all of the physical findings from his examination and treatment of Mr. Lawson were consistent with Mr. Lawson having pulmonary asbestosis.
15. Although there is insufficient evidence to show that plaintiff was exposed to asbestos during his employment at the Miller Brewing Plaint, there is competent medical evidence to show that plaintiff suffered from pulmonary asbestosis contracted from exposure to asbestos from prior employment.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has established that Mr. Lawson suffered from pulmonary asbestosis as a result of being exposed to asbestos in the workplace. N.C. Gen. Stat. § 97-53.
2. Plaintiff failed to show by the greater weight of the evidence that Mr. Lawson was exposed to asbestos for a thirty-day period within any consecutive seven-month period during his employment at the Miller Brewing Plant. N.C. Gen. Stat. § 97-57.
3. Plaintiff has failed to prove by the greater weight of the evidence that she is entitled to recover any workers' compensation benefits from defendant-employer and Employers Insurance of Wausau.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits on behalf of deceased-employee under the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay their respective costs in this action.
This the ___ day of February 2000.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
Decision written after retirement
J. HOWARD BUNN, JR. COMMISSIONER
LKM/jth